ROBINSON *et al.*, appellants, *v.* Lessee of ADAMS, respondent.

## *Construction of will.*

Testator devised as follows, "Item, I give to my two sons, namely W. and F., all my land at, &c., to be equally divided between them and their heirs for ever: If any one of my aforesaid children should die, before they come to lawful age, their lands to go to the survivors; that is, if T. should die before he comes to lawful age, I give his share of land, where W. now lives, to my daughter E., to her and the lawful begotten heirs of her body for ever; provided, T. have heirs, before he comes to lawful age, then to him and his heirs for ever; and likewise, if W. should die, without heirs, to go to F., and if A. should die, without heirs, to go to V.; and if J. should die, before he comes to lawful age, without heirs, then his share of land here, where I now live, I give to my daughter C., to her, and her lawful begotten heirs of her body for ever:" *held*, that W. took an estate in fee-simple, subject to an executory devise to F.

An action of trespass of ejectment was brought by the respondent against the appellants, in the common pleas of Sussex, for a tract of land situated in that county. The action was removed into the supreme court, by *certiorari ;* and upon the trial there, the jury found a special verdict.

The verdict states, "that Thomas Bagwell was seised in his demesne as of fee, of a moiety of a tract of land, called Long Neck, of which the land

---

in question is part, and, by his will, dated the 15th day of April 1690, devised the same in manner following :—' I, Thomas Bagwell, &c., for my worldly estate that the Lord hath endowed me with, do give and bequeath as followeth : Item, I make my dear wife the executrix. Item, I give to my two sons, namely, William and Francis, all my land at the Horekiln, in Sussex county, &c., to be equally divided between them, and their heirs for ever. Item, this plantation, where I now live, &c., I give to my son John, to him, his heirs for ever; that is, from a white oak, by the creek side, &c., to the head line. Item, I give to my son Thomas, the rest of my land here, to be equally divided, and he to have share in the orchard ; and likewise my part of the cedar island, I give to Thomas and John, to be equally divided between them, to them and their heirs for ever ; only my two daughters, namely, Ann Bagwell and Valiance Bagwell, to have an equal share of the said island, so long as they keep themselves unmarried, and no longer. Item, I give to my son Thomas, two hundred acres of land, adjoining William Burton's branch, to him and his heirs for ever. Item, I give to my son John, one negro woman. *Item, I give to my daughters, Ann and Valiance, two hun- [*xiii. dred twenty and five acres of land, adjoining John Abbot, Thomas Mills and Francis Wharton, to them and their heirs for ever. If any one of my aforesaid children should die, before they come to lawful age, their lands to go to the survivors ; that is, if Thomas should die, before he comes to lawful age, I give his share of land, where William now lives, to my daughter Elizabeth Tilney, to her, and the lawful begotten heirs of her body for ever ; provided Thomas have heirs, before he comes to lawful age, then to him, and his heirs, for ever : and likewise, if William should die, without heirs, to go to Francis ; and if Ann should die, without heirs, to go to Valiance ; and if John should die, before he comes to lawful age, without heirs, then his share of land here, where I now live, I give to my daughter Comfort Leatherberry, to her and her lawful begotten heirs of her body for ever. Item, I give to every one of my grandchildren a calf, to them and their heirs for ever ; to my daughters Ann and Valiance, a feather bed a-piece, to them and their heirs for ever ; to my four sons, Thomas, William, Francis and John, a gun a-piece, to them and their heirs for ever ; to my son Thomas, my pistols and holsters, for ever, &c. And all the rest of my personal estate, I give to my wife and my six aforesaid children, to be equally divided among them, to them and their heirs for ever ; to wit, Thomas, William, Francis, John, Ann and Valiance. I set my boys at age at eighteen, and my girls at sixteen ; and their estate to be divided presently after my decease, by my friends William Curtis, William Burton and William Parker, which I leave overseers over my children, &c.'

"That the testator died seised as aforesaid ; that his will was duly proved, the 16th of September 1690 ; that he left issue, all his sons and daughters before mentioned ; that after his death, William, his eldest son, entered into the premises in the declaration of the plaintiff mentioned, and being thereof seised, died intestate, leaving issue William, his only son, by one *venter*, and Agnes, his only daughter, by another *venter ;* that the said William and Agnes, after their father's death, entered into the premises of which he died seised, and made partition, as by the records of the orphans' court appeareth, and the lands in the declaration mentioned were allotted to the said William, the son, who died intestate, seised thereof,

leaving two daughters, Patience and Elizabeth, and a widow, Ann; that the said Ann, as tenant in dower, and the said Patience and Elizabeth, as heirs of the said William, entered, and were seised, &c.; that the said Patience and Elizabeth died without issue; that their mother, Ann, married Benjamin Burton, and died, leaving issue by him, two daughters, Ann and Comfort, who entered, and were seised, &c.; that the said Ann married Thomas Robinson, and died, leaving issue, the appellants; that Comfort died without issue; that Agnes, the daughter of William Bagwell, the first, married John Adams, by whom she had issue, several children, of whom John Adams, the lessor of the plaintiff, is the eldest son and heir-at-law; that he entered and demised, &c., upon whom the defendants entered, &c. But, whether upon the whole matter, &c., the jurors doubt, and pray the opinion of the court, &c. And if, &c., they find for the plaintiff, and assess damages, to five shillings and six pence for costs, besides the costs expended: but if, &c., they find for the defendant."

Upon this verdict, the supreme court, in April 1787, gave judgment for the plaintiff, from which judgment the defendants appealed. An *habere facias possessionem* was awarded to issue, for delivering possession to the plaintiff, upon security tendered, &c.

It is stated, by the counsel on both sides, that the only question in this cause is, whether William Bagwell, the son of Thomas Bagwell, took, under his father's will, an estate in fee-simple, or an estate in fee-tail. If he took an estate in fee-simple, then, by our intestate acts, that estate is vested in the appellants. If he took an estate in fee-tail, the land in question descended to the lessor of the plaintiff, now respondent, the heir-in-tail.

It is time that this controversy should be finally decided, or, large as the contested property is, it may prove ruinous to all persons concerned. We are informed, that several suits have been brought for this estate; verdicts given against one another; and contradictory opinions, of very eminent lawyers, in several parts of America, obtained. The present action has continued above fifteen years.

It is contended by the counsel for the appellants, that William Bagwell, the devisee, took an estate in fee-simple, subject to an executory devise to Francis Bagwell, contingent on William's dying under age, and without issue. Their argument opened with an observation, that " estates in fee-tail are no favorites of the law, and particularly ought not to be so, under republican forms of government, so that if there be any doubt in this case, the determination should incline rather towards the appellants, than the respondent."(*a*)

---

(*a*) It is greatly to be desired, that the persons appointed by our courts, for viewing and dividing lands among the children of intestates, would not suffer themselves so easily to be prevailed upon to report, that the lands will not bear a division. Thus, very often, an estate is adjudged, as incapable of division, to one of the children, that might well be divided into five or six, if not more, farms, as large as many in the eastern states, upon which the industrious and prudent owners live very happily. By the usual way of proceeding among us, one of the children is involved in a heavy debt, that frequently proves ruinous to him; or, if the debt of valuation is paid to the other children, it is in a number of such trifling sums, and at such distances of time, one from another, that they are of very little use to those who receive them. This matter deserves very serious consideration. It is much to be wished, that every citizen could possess a freehold, though some of them might happen to be small. Such a disposition

Robinson v. Adams.

*" The intention of the testators," say the counsel for the appellants, " ought to prevail in the construction of wills; that these are presumed to be made in extreme weakness, and without good advice; that, therefore, great indulgence has been shown to improprieties of expression; and judges have frequently added, subtracted, changed and transposed words; that, according to this rule, these words in the will, 'and likewise, if William should die without heirs, to go to Francis,' should be read thus: 'and likewise, if William should die, before he comes to lawful age, without heirs of his body, his estate to go to Francis;' that this alteration is agreeable to the meaning of the testator, because, after having just before mentioned his children, and William amongst them, he says, 'if any one of my aforesaid children should die, before they come to lawful age, their lands to go to the survivors;' and then, immediately proceeds, binding this part and the following into one sentence, by these strongly connecting explanatory words, 'that is, if Thomas should die, before he comes to lawful age, I give his share of land, where William now lives, to my daughter Elizabeth Tilney, to her and her lawful-begotten heirs of her body for ever; provided, Thomas have heirs before he come to lawful age, then to him and his heirs forever; and likewise, if William Bagwell should die, without heirs, to go to Francis, &c.;' that this construction is consistent with the design of the testator, expressed in the foregoing part of his will, where he gives William an estate in fee-simple; that this estate, being given to the testator's immediate heir-at-law, ought not to be diminished by the following words, unless they necessarily require it so to be; that they do not thus require it to be diminished; that all the different parts of the will are reconcilable; that there was a fee-simple given to William, with an executory devise over to Francis, upon the contingency of William's dying before he came to lawful age, and without heirs of his body; that the contingency never happened; but William died seised of the fee-simple." Many authorities have been read, and ably applied, in support of these principles.

By the counsel for the respondent, it is urged, " that the construction contended for, on the other side, is arbitrary and inadmissible; that there is plainly an estate in fee-tail given to William Bagwell, because it is [*xvi. impossible, as was conceded *by the counsel for the appellants, that he could die 'without heirs,' as long as his brother Francis, to whom the limitation over is made, was living; and therefore, that limitation demonstrates, that by the words 'without heirs,' was meant, 'without heirs of his body;' that there is no necessity for overthrowing the fee-tail, thus evidently limited; that the words, 'if any one of my aforesaid children should die, before they come to lawful age,' &c., were proper, if only some of them were under age; that there is reason to believe, from the facts stated, of William's being the eldest son, and of his living by himself; and more especially, from the words made use of in the limitation over upon his death, in which there is no mention of his 'dying before lawful age,' that he was of age, at the making of the will; that this construction is con-

of property cherishes domestic happiness, endears a country to its inhabitants, and promotes the general welfare. But whatever influence such reflections might have upon us, on other occasions, they can have little, if any, on the present, for reasons that will hereafter appear.

firmed by the limitations over, upon the deaths of Thomas and John, which are expressly made to depend not only upon their 'dying without heirs,' as with respect to William, but also upon their dying, before they come to lawful age ;' that these words are omitted again, in the limitation over upon the death of Ann, and in all probability, for the same reason ; that the testator has in this manner, repeatedly varied his language, in conformity to his own views ; that these views, thus declared, ought not to be controlled by implications, and disappointed by additions, subtractions, changes or transpositions, supposed to be more agreeable to his mind ; that this would be to make wills, not to interpret them ; that the construction in favor of the respondent is more easy and natural than that in favor of the appellants, and is much recommended, by not offering such violence to the expression of the testator."

The counsel for the respondent have insisted on this construction, with a great force of argument, drawn from reason and authorities. We have, therefore, thought fit to employ a considerable time in our deliberations upon this cause.

It is agreed, by the counsel for the appellants and for the respondent, that the intent of the testators ought to govern in the construction of wills, except where a disposition is made contrary to law. As there is no such disposition now in question, the sole inquiry is, what was the intent of the testator ? This intent is to be collected from the entire will, and not from any disjointed parts. Technical terms are not necessary for conveying it ; and if such are used, their legal acceptation may be controlled by other words, plainly declaring the meaning of the testator. (2 Bl. Com. 379 ; 2 Burr. 770 ; 1 Ves. 142 ; Doug. 309, 327 ; Cowp. 239, 659 ; Vin. tit. Devise, 181.) No words are to be rejected, that can possibly have any sense assigned to them, not incompatible with clearer expressions, or manifest general intent. (Cases temp. Talbot 29 ; 6 Mod. 112.)

In the present instance, the testator, at first, certainly gives a *fee-simple to his son William : yet, if the devise over to Francis, " if William should die without heirs," is a substantive clause, independent of the next foregoing clause, that begins with the words, " if any one of my aforesaid children should die, before they come to lawful age," the fee-simple is turned into a fee-tail. On the other hand, if these two clauses are but parts of one continued sentence, through the whole of which, the testator's disposing design holds on, uncompleted, until the conclusion, then the fee-simple remained in William, with an executory devise to Francis, dependent on the event of William's " dying without heirs" of his body, and " before he came to lawful age."

It has been strongly objected by the respondent's counsel, that the construction urged for the appellants, breaks through the words of the will, to let in an estate by implication, under the notion of a power being vested in judges to determine the intention of the testator, by adding to, or taking from, his words ; a construction, so severe, that it may well be compared to the bed of Procrustes; if the expression is too short, rack it out; if too long, lop off part." The power of judges would, indeed, be as exceptionable as it is represented to be, if as extensive as it is supposed to be, in the objection : but the alteration of words, by judges, in considering wills, are not made, strictly speaking, to discover the intention of testators, but only

*xvii.]

Robinson v. Adams.

to express it properly when discovered. They do not introduce a supposed intention, but wait upon the true intention. .

It was observed, in answer to this objection, by the learned gentleman who replied for the appellants, " that the respondent's counsel themselves, make use of implications, in sustaining their own construction ; for in order to form the estate-tail, asserted by them to be limited to William Bagwell, they are obliged to this clause, ' and likewise, if William Bagwell should die without heirs,' to add these words, ' of his body ;' and again, to render their construction consistent with reason, they are compelled to allow that the limitation over to Francis gives him a fee-tail, according to the intention of the testator, though only an estate for life, according to the words of the will." There is great weight in this observation. It proves the will to be so defective in expression, that, though the two parties are led into opposite deductions, yet each of them is under a necessity of being guided by implications. Nor is the use of implications, while bounded by legal limits, to be condemned ; because they are to be admitted only for effectuating the general intent of testators. (1 Burr. 50, 51.)

We must, therefore, still recur to the original question, what was the intention of the testator ? *The attempt of the respondent's counsel [*xviii. to show, that William was of age at the making of the will, is ingenious. However, the fact is not found, and we cannot suppose it. Indeed, it appears to be contradicted by these words, " All the rest of my personal estate I give unto my wife and my six aforesaid children, to be equally divided among them, to them and their heirs for ever, viz., Thomas, William, Francis, John, Ann and Valiance Bagwell. I set my boys at age at eighteen, and girls at sixteen, and their estate to be divided presently after my decease, by my friends, &c., whom I leave as overseers over my children, &c." Here the word "their" plainly refers to his "boys" under eighteen, and the words " estate to be divided presently, &c.," refers to the foregoing words, " to be equally divided among them, &c.;" and as William is named as one of the "six aforesaid children," among whom the residue of the personal estate was thus " to be equally divided, &c.," he and the other five children seem to be classed together, as being all under age.

It is true, that these words, "if any one of my aforesaid children should die before they come to lawful age, their lands to go to the survivors," do not prove, by their relation to what went before, that William was then under age, though he was one of the " aforesaid children:" for, as was observed by the respondent's counsel, the words may well be satisfied, if only some of them were under age. But these words, taken in connection with those that precede, and with those that follow them, acquire a very different and a decisive force. The directions, at first, are only general, relating, without name, to " any one of the aforesaid children," and without distinction, " to the survivors." These general terms are immediately succeeded by this explanatory specification : " that is, if Thomas should die, before he comes to lawful age, I give his share of land, where William now lives, to my daughter Elizabeth Tilney, to her and her lawful-begotten heirs of her body for ever ; provided, Thomas have heirs, before he comes to lawful age, then to him and his heirs for ever ; and likewise, if William Bagwell should die, without heirs, to go to Francis ; and if Ann should die, without heirs, to go to Valiance ; and if John should die, before he come to lawful age, without

Robinson v. Adams.

heirs, then his share of land here, where I now live, I give to my daughter Comfort Leatherberry, to her and her lawfully-begotten heirs of her body, for ever."

Construing these words, "that is," according to the common manner of speaking, and so they ought to be construed, it is plain, that the testator designed, in his subsequent words, to be more particular or exact than he had yet been, and as in these, he mentions William again, and makes a substitution in case of his dying, it is evident, that William was meant, by the testator, as *"one" of his "aforesaid children," whose lands, if they "should die, before they came to lawful age," should "go to the survivors."

*xix.]

It is remarkable, how much pains the testator employed, in this part of his will, to prevent his meaning from being mistaken. In the limitation over, if Thomas should die, he applies his former direction thus : "that is, if Thomas should die, before he come to lawful age, I give his share of land to my daughter Elizabeth Tilney, &c." And then, to guard against a misconstruction of these words, whereby Thomas's issue might be disinherited, in case Thomas should die, before he came to lawful age, leaving issue, subjoins, "provided, Thomas have heirs, before he comes to lawful age, then to him and his heirs for ever."

No point of law can be clearer, than that this devise gives a fee-simple to Thomas, with an executory devise to Elizabeth Tilney, if Thomas should die, without heirs of his body, and before he should come to lawful age. Why should not the like provision be extended to the case of William, when the testator, after this full exposition of his mind with regard to substitution, instantly adds, "and likewise, if William Bagwell should die without heirs, to go to Francis." The most obvious and natural construction of these words is, that William's estate should be no otherwise affected by the limitation over to Francis, than Thomas's was by the limitation over to Elizabeth ; though, perhaps, the testator also meant, that Francis should take such an estate as Elizabeth would take on a similar contingency.

This construction is further recommended, by the consideration, that the limitation over to Francis is nonsense, it not being said, what is "to go" to him, unless it refer to the preceding words. The very imperfection in this part of the will carries strong evidence in it, that the testator, at the instant of using this expression, united it, in his idea, to the antecedent part, especially, as he employs the same peculiarity of phrase for transferring the estate, in both places.

The beginning of this explanation states Thomas to be under age: the conclusion of it states John to be under age : between these are comprehended the provisions respecting William and Ann. From first to last, the words are all connected by the word "and," without the intervention of any stop. If, then, the two extremes relate to persons under age, and are confessedly explanatory of the general directions first mentioned, the intermediate parts must also refer to persons under age, and be explanatory of the same directions as to them, for there is no period at which the explanation rests, before the end of the devise to Comfort Leatherberry.

We can easily account for inaccuracies in the testator's expressions, from sickness, hurry, want of knowledge or assistance : but we cannot account for such an inequality of distribution as *is required by the construction in behalf of the respondent. The testator's offspring appear to

*xx.]

be alike objects of his parental affection and providing care. Yet, what a needless, useless and incumbering diversity of regulations is introduced, if Thomas took a fee-simple, with an executory devise to Elizabeth; William, a fee-tail, with an estate for life, or fee-tail limited to Francis; Ann, a fee-tail, with an estate for life, or a fee-tail limited to Vallance; and John, a fee-simple, with an executory devise to Comfort?

On the contrary, the construction in favor of the appellants, gives a sameness of arrangements, correspondent with the sentiments of the father towards his children. Each son took an unfettered estate, that is, a fee-simple, in the part devised to him; of course, if any son " came to lawful age," he might dispose of his share as he pleased; if any son died, " before he came to lawful age," leaving issue, the estate went to that issue; but if any son died, before he came to lawful age, and without leaving issue, the estate went to the substitute. This, we believe, to have been the testator's design; and we think, he manifested in it great prudence, and a paternal impartiality.

It has been observed, by the respondent's counsel, " that this construction would carry the estate entirely from the descendants of the testator into a strange family, and the respondent's lessor would suffer the peculiar hardship of being stripped of the inheritance, though he is heir of the testator and of the devisee."

It is impossible to calculate hardships of this kind, amidst the mutabilities of human affairs. It is to be remembered, that William Bagwell, the devisee and heir of the testator, was succeeded by his son William, and this William by his two daughters. Thus, the construction of the counsel for the appellants, allows a fee-simple to the heirs of the testator and devisee for several generations. About fifty years ago, as appears from the records of the orphans' court, the mother of the respondent's lessor obtained a partition with her brother William, the second, of the lands devised by the testator to William, the first, their father, as of an estate in fee-simple, and the lands assigned to her for her share are held under that partition to this day. It would have been thought, at that time, extremely hard, if it had been insisted, that William, the grandfather of the respondent's lessor, took in fee-tail the lands devised to him by this will, that, therefore, upon his death, the whole descended to his son William, and that his daughter Agnes was not entitled, under our intestate acts, to any part of so large an estate. Now, the complaint is directly reversed, and the construction that inured to the great benefit of the mother, is reprobated by the son, claiming under her title. Yet, if either of the daughters of William, the second, had issue surviving, the same interpretation of this will would now suit the respondent's *lessor, that heretofore was so advantageous to his parent. [*xxi.

The true construction of a will is to be collected from the words; and is not to be affected by collateral circumstances; consequently, not by events subsequent, remote, uncertain, and utterly unconnected with the contingencies alluded to in the will. (3 P. Wms. 259; Salk. 232, 235; 3 Burr. 1581.) This rule cannot be departed from. The security of property, and the order of society, depend on an observance of the laws.

Our construction of this will, appears to us, to be **strengthened by three considerations**, which we shall now mention.

Robinson v. Adams.

1st. It is very credible, that when a person undertakes to make a will, he means to dispose of all his property; and though we do not perceive any sufficient reasons why this well-founded presumption might not be generally adopted as a guide in the interpretation of wills, especially, in devises to children and other lineal descendants of the testator, (*a*) where the gifts dictated by fatherly affection, as its last acts of kindness, may justly be deemed as designed to be the most beneficial to the objects of it, if no restriction is declared; yet, it must be acknowledged, that we do not recollect any case where it has been so adopted. Judges, however, have availed themselves of short and slight intimations in wills to this purport; have exerted themselves to render the disposition commensurate to the intention; and have particularly relied on such words as are used in this will, "for my worldly estate, &c.," to prove that the testator designed to devise all his interest in an estate. *Ibbetson* v. *Beckwith*, Cas. temp. Talb. 157; *Tanner* v. *Morse*, Ibid. 284; *Tufnel* v. *Page*, Barnard. 9; Cowp. 355; *Grayson* v. *Atkinson*, 1 Wils. 333; *Frogmorton* v. *Holyday*, 3 Burr. 1622–3. This inference appears to be peculiarly apposite, where a question arises from various terms of limitation, or expressions tantamount, whether a devisee takes in fee-simple, or in fee-tail.

The respondent's counsel, though strenuous advocates for their client's pretentions, have been too candid to assert, that the estate given to William, and according to their idea, contracted to an estate-tail, should, on failure of his issue, expand into a fee-simple in Francis. They say, "Francis was to take the like estate that was limited to William, that is, an estate-tail." Of course, a reversion would remain undisposed of by the testator, contrary to his design, manifested not only by the preamble of his will, but also by the conclusion of it, in which last he uses these words, *"all the rest of my personal estate I give, &c."* This clause, we believe, never would have been restricted to "his personal estate," if he had not been fully persuaded, that he had before disposed of all his real estate. (Cowp. 307; 3 Burr. 1622, 1623.)

*xxii.]

2d. If it had been the intention of the testator, to give an estate-tail to any of his sons, what reason can be assigned, why he did not use plain words for that purpose? He well knew even the technical terms for creating such an estate; and repeatedly employed them, in limitations over to his daughters, Elizabeth and Comfort, that to each of them being "to her and the lawfully-begotten heirs of her body for ever." But such terms he never admitted in the devise to any of his sons, nor indeed to any of his unmarried daughters.

A case was quoted by the counsel for the respondent, from Pollexfen, to show, that where there is a variety of expression, there is a variety of intention. That case is very properly applicable here, for difference of language,

---

(*a*) A remarkable distinction taken between a devise to a child, and a devise to a stranger, in Cro. Eliz., Fuller *v.* Fuller. In Modern Cases in Law and Equity, 132, it was held, that where a settlement is made by a lineal ancestor, in consideration of the marriage of his son, all the remainders to his posterity are within the consideration of that settlement; but when it is made by a collateral ancestor, after the limitations to his own children, all the remainders to his collateral kindred are voluntary.

not otherwise to be accounted for, must certainly proceed from difference of meaning.    2 Wilson 81.

3d.  It is inconsistent with the testator's intention, to construe the devise to his son William to be a fee-tail, because it is inconsistent with that meaning which he himself has affixed to the words of the devise.  (2 Abr. Ca. in Eq. 298, 302.)  It is observable, that the testator, in the latter part of his will, gives personal effects to the legatees " and their heirs for ever." Though these words in such cases are not necessary ; yet they incontestably show the donor's opinion of their force, and demonstrate his determination to give the most absolute estate he could give.  The same was his determination, as he used the same words, in the devise to his son William, and therefore, the son took a fee-simple.

The judgment of the supreme court reversed.